### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel Marvin Munt, | **Case No. 17-cv-5215 (SRN/SER)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Tom Roy, Mike Warner, and David Coward, | |
| Defendants. | |

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendants Tom Roy, Mike Warner, and David Coward's (the "Defendants") Motion to Dismiss [Doc. No. 22] and Plaintiff Joel Marvin Munt's ("Munt"): First Motion for Temporary Restrainting [sic] Order Pursuant to Fed. R. Civ. P. 65(b) ("First Motion for TRO") [Doc. No. 3]; Emergency Request for Relief ("Second Motion for TRO") [Doc. No. 17]; Motion to Strike [Doc. No. 33]; First Motion for Expedited Court Action ("Motion to Stay") [Doc. No. 38]; and Request for Return of Documents ("First Motion for Preliminary Injunction") [Doc. No. 42].[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1 for a report and recommendation. For the reasons stated below, the Court recommends granting

---

[1] The Court has not ruled *ex parte* on Munt's First and Second Motions for TRO. As such, Munt's Motions for TROs are considered motions for preliminary injunction. *See* Fed. R. Civ. P. 65. This does not change the nature of the Court's analysis of Munt's Motions for TROs. *See, e.g.*, *Benfield, Inc. v. Moline*, 351 F. Supp. 2d 911, 916 (D. Minn. 2004) (Davis, J.) (stating that "[t]he Eighth Circuit Court of Appeals has established the [same] standard for considering preliminary injunctions and temporary restraining orders." (citing *Dataphase Sys. v. CL Sys.*, 640 F.2d 109 (8th Cir. 1981)).

For simplicity, the Court refers to Munt's Motions for TROs and First Motion for Preliminary Injunction collectively as "Motions for Injunctive Relief," notwithstanding the technical distinction.

Defendants' Motion to Dismiss, denying Munt's motions, and dismissing the case without prejudice.

## I.     BACKGROUND

The factual and procedural background underpinning this case is extensive. For clarity and brevity, the Court only addresses the factual and procedural background relevant to the Court's analysis of the issues before it.

### A.     Factual Background

Munt filed suit under 42 U.S.C. § 1983, alleging that Defendants failed to provide him with meaningful access to the courts. *See generally* (Compl.) [Doc. No. 1]. Munt, who is incarcerated at the Minnesota Correctional Facility in Oak Park Heights ("MCF-OPH"), asserts that the Minnesota Department of Corrections (the "DOC") "has rendered it impossible for [him] to file this suit as originally intended. Instead it is a stripped down version intended to obtain enough preliminary relief that the suit may be amended to bring the full suit." (*Id.* at 3–4).[2] Munt goes on to state that "[w]hen brought, the actual Complaint will have far more Defendants, more and broader claims, more harm detailed, more relief sought and will include considerable supporting materials." (*Id.* at 5).

Munt alleges impediments accessing the court stemming from "(1) onerous copying, printing, and postage policies; (2) inadequate access to legal resources; and (3) overly restrictive policies regarding personal property that prevent inmates from properly maintaining legal work."

---

[2]     When referencing the Complaint, CM/ECF pagination is used.

Furthermore, when Munt filed his Complaint he was incarcerated at the Minnesota Correctional Facility in Stillwater ("MCF-Stillwater"). *See* (Compl. at 3). Munt was transferred to MCF-OPH during the pendency of this litigation. *See* (Request for Return of Documents) [Doc. No. 42]; (Mem. of Law in Opposing Pl.'s Second Mot. for Preliminary Injunctive Relief) [Doc. No. 50 at 1–3].

(Order Dated May 3, 2018) [Doc. No. 43] (citing Compl. at 9–16). As it relates to the copying, printing and postage policies, Munt asserts that it costs $.25 per page and "[t]here is no provision to make reasonable payments." (Compl. at 9). Under this copying regime, Munt alleges that it would cost in excess of $1450 to serve all "31 defendants who will have to be served." *See* (*id.* at 9–10). Furthermore, Munt alleges that the limitation of printing fifty pagers per week, with "no exceptions," would require many years "to print enough copies to serve all of the defendants." *See* (*id.* at 10, 11). With respect to postage, Munt asserts it "comes directly off your account. If there is more postage than you have money it still goes out, but money is taken in full when you get money again." Munt's greatest concern in this regard is "[t]here is no ability to make reasonable payments." *See* (*id.* at 12). Munt also alleges that he is forced "to choose between hygiene items and medicine or making copies." *See* (*id.* at 9).

With respect to inadequate access to legal resources, Munt asserts that inmates are allowed only two time slots per week.[3] *See* (*id.* at 13). Because only one of these slots can be used for typing, "[inmates] only have 2.5 hours a week to work on . . . pleadings where unimpeded access would permit 168 hours. The other slot is research with a new program that makes research far more cumbersome." (*Id.*). Munt also alleges that inmates "cannot search Federal District or Circuit Court cases and must have the exact citation to look one up." (*Id.*). Furthermore, Munt alleges that "[i]f [a] unit is locked down or the Law Library is closed[, inmates] cannot research, type or access . . . files." (*Id.*). Munt alleges he "often lose[s] entire weeks of deadline due to this, sometimes over a month at a time." (*Id.*).

---

[3]     From the Complaint, it appears that a "time slot" equates to two-and-half hours in the law library. *See* (Compl. at 13).

Munt's allegations regarding the property policy generally concern a "two-bin limit" on the amount of personal property that an inmate may store while incarcerated. *See generally* (Compl. at 15–16). Munt alleges that "[l]egal papers are not exempt from this" limit and that he has "lost a considerable amount of legal papers—much of it irreplaceable—due to this limit." (*Id.* at 15). Munt further alleges that beyond "their value to ongoing actions, all of these papers are evidence of the harm caused by issues to be raised in the actual complaint." (*Id.*). Munt also states that "[a]ny [segregation] time or transfer interrupt[s] access to . . . legal materials and require[s]" that he fit his property into two bins. *See* (*id.*). Munt asserts this "has resulted in the loss of almost all evidence needed to prove my case." (*Id.*). For example, Munt alleges that he "was recently forced to fit my property into two bins. I lost nearly all of the evidence for this suit as well as a considerable amount of other legal materials and property." (*Id.* at 16). Munt further alleges that "[o]fficials delayed response to my kites or failed to respond at all to the requests for emergency exemption and even the untimely responses would not have prevented this irreparable harm." (*Id.*).

Munt is suing Defendant Tom Roy ("Roy") in his official capacity. (*Id.* at 7). Munt asserts Roy "is the ultimate person responsible for the policies that underly [sic] the Constitutional violations in question" and because he "has the authority and duty to see that any Court Orders are complied with." (*Id.*). Munt is suing Defendant Mike Warner ("Warner") in both his individual and official capacities. (*Id.*). Munt asserts Warner's "authority includes Discipline and Property" and that Warner's "willful inaction has knowingly caused harm to this suit . . . and impeded other court actions." (*Id.* at 8). Defendant David Coward ("Coward") is also sued in both his individual and official capacities. (*Id.*). Munt asserts that Coward "is responsible for the [MCF-Stillwater] Law Library and his willful actions and inaction has knowingly impeded this suit, caused other pleadings to be untimely, inadequate or indefinitely delayed." (*Id.*). Munt's Complaint includes no

4

other discussion regarding the Defendants or their specific conduct that might give rise to his allegations. *See generally* (Compl.).

Munt seeks both injunctive relief and monetary damages from Defendants. *See* (Compl. at 20–24). Specifically, Munt asks the Court to order Defendants to: (1) "provide [him] with copies, printouts in excess of 50 pages per week, postage, and legal materials (paper, pens, envelopes, etc.) regardless of his ability to pay for them"; (2) "permit [him] to buy envelopes larger than the current manuscript envelopes"; (3) "permit [him] use of a computer and laser printer/copier in his cell or ensure him at least 12 hours of access to the law library every day"; (4) "give [him] anytime access to all Federal Circuit and District Court cases including the ability to search them and the ability to perform sheppardizations [sic] from the same computer on which he types, researches and prints"; (5) "exclude all of [his] legal materials from the two-bin [property] limit"; (6) "ensure there is no interruption in [his] complete access to all of his legal materials regardless of inmate status (including [segregation]) and facility"; (7) "ensure [he] has access to his computer files wherever he may be and prohibit [Defendants] from deleting, tampering or otherwise interfering with his computer files"; (8) "permit [him] to send back in all of his legal materials that have been sent out and to not interfere in any way with him receiving these materials"; (9) "reimburse [him] for all costs related to sending out property as well as for sending it back in"; (10) "reimburse [him] for all property shipped out and all property tossed or otherwise [lost][4] due to the two-bin limit"; (11) "pay $1,000,000 in compensatory damages for the loss of use of the property[,] . . . harm caused due to the enforcement of the two-bin policy[,] and denial of adequate access to adequate legal resources"; (12) "pay $10,000,000 in punitive damages for their willful harm to [his] legal actions by impeding or outright suspending his access to the Courts"; (13) the reopening

---

[4]      This word is illegible; it is the Court's best guess based on the context of the sentence.

of various cases in this District "with full deadlines so they may be replead[ed] with the impediments removed"; (14) "other relief necessary to remedy the violations and resulting harm raised herein"; (15) "permit [him] 6 months from the date he receives all of his shipped out materials to file the actual complaint, its supporting papers and accompanying motions as he had intended"; (16) and "[o]rder the Clerk to not interfere with the filing of the papers in #15."

### B.    Procedural Background

To date, Munt has filed twenty-one documents in support of this litigation: (1) his Complaint; (2) Application to Proceed Without Prepaying Fees or Costs; (3) First Motion for TRO; (4) an Affidavit in support of his First Motion for TRO; (5) a motion to recuse the undersigned and Judge Nelson; (6) a motion to waive the partial filing fee due as an *in forma pauperis* ("IFP") litigant; (7) an Objection to this Court's grant of his Application to Proceed Without Prepaying Fees or Costs; (8) Second Motion for TRO; (9) an affidavit in support of his second Motion for TRO; (10) a letter updating Munt's address with the Court; (11) Motion to Strike Defendants' Memorandum of Law Opposing Plaintiff's Motion for Preliminary Injunctive Relief ("Memorandum in Opposition to First TRO") [Doc. No. 27]; (12) a memorandum in opposition to Defendants' Motion to Dismiss; (13) a reply to Defendants' Memorandum in Opposition to Munt's First Motion for TRO; (14) Motion to Stay the proceeding pending resolution of other motions; (15) an affidavit filed in support of his First Motion for TRO and Motion to Stay; (16) a second affidavit filed in support of his Motion to Stay; (17) a request to have certain documents returned (which this Court treats as Munt's First Motion for Preliminary Injunction); (18) a reply to Defendants' Memorandum in Opposition to Munt's Second Motion for TRO; (19) a notice of appeal to the Eighth Circuit regarding his Objection to this Court's grant of his Application to Proceed Without Prepaying Fees or Costs; (20) Application to Proceed IFP before the Eighth

Circuit on appeal; and (21) a reply to Defendants' Memorandum in Opposition to Munt's First Motion for Preliminary Injunction. *See* [Doc. Nos. 1, 2, 3, 4, 7, 8, 13, 17, 18, 32, 33, 34, 35, 38, 39, 41, 42, 46, 47, 48, 55]. Munt is a prolific filer of documents, but this Court will only discuss those filings related to Munt's Motions for Injunctive Relief, Defendants' Motion to Dismiss, Munt's Motion to Strike Defendants' Motion to Dismiss, and Munt's Motion to Stay. Furthermore, Munt appears to make the same requests for relief across multiple motions, specifically as it relates to the return of certain documents drafted in November 2017. *See* (Second Mot. for TRO) (requesting the confiscated letter dated November 3, 2017, and related affidavit); (Aff. of Joel Munt, "Munt Aff. in Supp. of Second Mot. for TRO") [Doc. No. 18] (attesting to his segregation assignment on November 3, 2017, and that "[a] critical piece of evidence for the charges was a letter"); (Mot. to Stay at 3) (requesting the affidavit).

### 1.  Motions for Injunctive Relief

#### a.  First Motion for TRO

Munt's First Motion for TRO and affidavit in support track closely with his Complaint, e.g., Munt alleges essentially the same facts. *Compare* (First Mot. for TRO at 2–13), *and* (Aff. in Supp. of Plaintiff's First Mot. for TRO Pursuant to Fed. R. Civ. P. 65(b), "Aff. in Supp. of First TRO") [Doc. No. 4], *with* (Compl. at 9–16). Furthermore, Munt seeks the same injunctive relief— enjoining Defendants from enforcing the various policies at issue—in his First Motion for TRO and his Complaint. *Compare* (First Mot. for TRO at 11–13), *with* (Compl. at 20–24).

Defendants argue extensively that Munt has not been denied meaningful access to the courts and filed multiple affidavits in support of this position. *See generally* (Mem. in Opp'n to First TRO); *see also* (Aff. of David Coward, "Coward Aff.") [Doc. No. 28]; (Aff. of John Hillyard,

"Hillyard Aff.") [Doc. No. 29]; (Aff. of Victor Wanchena, "Wanchena Aff.") [Doc. No. 30].[5]

With respect to Munt's allegations related to the law library and access to legal resources, Defendants assert that "[o]ffenders have up to date access of state and federal cases and have the ability to shepardize" through LexisNexis. (Mem. in Opp'n to First TRO at 3) (citing Coward Aff. ¶ 14). Furthermore, "[o]ffenders have access to Minnesota Statutes, state, federal, and appellate rules of evidence and civil procedure, and Black's Law Dictionary" and "[i]f there is something that MCF-STW's library does not have that an offender wants, he can contact the State Law Library." (*Id.* at 4) (citing Coward Aff. ¶ 15). Also, while it is true that offenders in segregation are not "allowed out of segregation to go to the library," offenders may still "request legal materials from the library by sending the librarian a kite." (*Id.* at 13) (citing Coward Aff. ¶ 6).

With respect to printing and copying restrictions, Defendants assert that "[o]ffenders can print and/or copy up to 50 pages of legal materials a week at no charge." (*Id.* at 4) (citing Coward Aff. ¶ 8). Furthermore, "[i]f an offender needs more than 50 pages, he is charged $0.25 per page" and "[i]ndigent offenders receive an additional 35 pages of copies at no charge beyond the 50 page limit a week." (*Id.*) (citing Coward Aff. ¶¶ 8, 10). Finally, "[o]ffenders can receive 80 free pages of legal materials every two weeks from the State Law Library." (*Id.*) (citing Coward Aff. ¶ 11).

When addressing Munt's allegations regarding the postage policy and the mailing of documents, Defendants assert "indigent offenders have access to the same size envelopes, business and manuscript." (*Id.* at 8) (citing Wanchena Aff. ¶ 4). "If an indigent offender is using the manuscript envelope for legal materials, he can try to fit as many pages into the envelope as he

---

[5]    Exhibits were also attached to these affidavits. *See* (Exs. 1–2, Attached to the Coward Aff.) [Doc. No. 28-1] (a log of Munt's law library usage and the DOC's library usage policy); (Exs. 1–2, Attached to Hillyard Aff.) [Doc. No. 29-1] (the DOC's property and contraband policies); (Exs. 1–4, Attached to the Wanchena Aff.) [Doc. No. 30-1] (various DOC's policies and a kite from Munt answered by Wanchena that addresses Munt's concerns over the two bin limit.)

likes." (*Id.*) (citing Wanchena Aff. ¶ 4). Otherwise, when using "the manuscript envelope for non-legal purposes, [the offender] must abide by the 13 ounce weight restriction" (*Id.*) (citing Wanchena Aff. ¶ 4). Furthermore, if Munt "needs additional envelopes or office supplies, he can request these items from his case worker." *See* (*id.*) (citing Wanchena Aff. ¶ 5). Defendants assert that Munt has not made the appropriate request. *See* (*id.* at 9) (citing Wanchena Aff. ¶ 5).

Regarding the property restrictions at issue, Defendants state "[o]ffenders are allowed to have two bins of property." (*Id.* at 5) (citing Hillyard Aff. ¶¶ 9, 11; Wanchena Aff. ¶ 9). "An offender can [also] request an extra bin for legal materials." (*Id.* at 5) (citing Hillyard Aff. ¶¶ 9; 11, Wanchena Aff. ¶ 9). "An offender seeking a third bin may be denied if he has a history of hiding or using contraband." (*Id.*) (citing Wanchena Aff. ¶ 9). There are, however, situations in which a third bin is not allowed, e.g., when an inmate is double-bunked or placed in segregation. (*Id.* at 5–6) (citing Wanchena Aff. ¶ 10).

Finally, as it relates to Munt's allegations that he must choose between hygiene items and other necessities or materials to bring his causes of action, Defendants assert:

> Indigent offenders also receive the following items free of charge: one pen as needed; 35 sheets of writing paper per week; one first class (maximum weight 13 ounces) postage paid large (9.5" x 12.5") envelope per week; two first class (maximum weight 13 ounces) postage paid business size envelopes per week (up to 4" x 9.5"); a total of 35 sheets of legal and medical record photocopies per week; one over the counter (OTC) medication from canteen per week; laundry soap and personal care items including such examples as toothbrush, toothpaste, razor, comb, deodorant, soap, shampoo, dental floss loops, and (if wearing dentures) denture cleaner and medically-authorized adhesive as allowed on the MINNCOR restricted centralized canteen catalog.

(*Id.* at 8) (citing Wanchena Aff. ¶ 3).

In light of the above assertions, Defendants argue that Munt's First Motion for TRO should be denied because he has failed to substantiate that an injunction is warranted under the *Dataphase* factors. *See* (*id.* at 10–21). Ultimately, Defendants argue that Munt cannot succeed on the merits

of his claims in light of *Lewis v. Casey*, 518 U.S. 343 (1996), which holds that inmates are not entitled to unfettered access to a law library or legal assistance. *See* (*id.* at 11, 18, 20).

Munt filed a reply to Defendants' memorandum in opposition. *See generally* (Reply to Defs.'s Resp., "Reply to Opp'n to First TRO") [Doc. No. 35]. Munt first attempts to rebut various arguments asserted by Defendants by calling into question the veracity of certain statements. *See, e.g.*, (*id.* at 1) ("Defendants say electronics must be transparent. This is purgery [sic]. Typewriters and the electric razers [sic] are not transparent."); (*id.* at 22) (stating Wanchena "perjures himself in [paragraph] 8. All of my requests to exceed the 2 bin limit have been clear it is due to legal materials."). Munt, however, does not support his position with kites or other supporting documents. Next, Munt argues that his First TRO should be granted because he has demonstrated an injunction is warranted under the *Dataphase* factors. *See* (*id.* at 6–16).

Specifically, with respect to access to the law library. Munt asserts that "[t]he fact that a habeas petition that should have been filed in Nov[ember] still hasn't been filed or that I have been unable to file the full version of this suit are just two" instances that demonstrate irreparable harm. *See* (*id.* at 6). With respect to balance of the harms, Munt asserts this factor weighs in his favor because "[t]he DOC has chosen . . . to intentionally design a system that impedes court access," which conflicts with Supreme Court precedent that requires "meaningful access to the courts." *See* (*id.* at 8). With respect to success on the merits, Munt asserts "[t]he impediments do not appear to be disputed" and "[t]hat my court actions have been harmed proves that" Defendants have failed to provide meaningful access to the courts. *See* (*id.* at 10). For example, Munt states but for the Defendants impediments, he "would likely not still [be] serving a life sentence." (*Id.*). Lastly, Munt asserts the public interest factor is met because it is always in the public interest to uphold the Constitution. (*Id.* at 11). Munt's remaining arguments for why injunction relief should be granted

regarding Defendants' other policies are similar to those he makes in connection with why the injunction should be granted with respect to access to the law library; Munt incorporates many of the same arguments by reference. *See generally* (*id.* at 13–16).

### b. Second Motion for TRO and First Motion for Preliminary Injunction

Munt's Second Motion for TRO and First Motion for Preliminary Injunction concern documents from November 2017, allegedly relating to disciplinary actions against him and materials Munt states were taken from him on January 13, 2018. *See* (Mot. for Second TRO at 1); (First Mot. for Prelim. Inj.). Specifically, Munt asserts that he was unlawfully sent to segregation on November 3, 2017, and a letter bearing the same date was critical evidence in demonstrating this fact. *See* (Aff. of Joel Munt, "Munt Aff. in Supp. of Second TRO") [Doc. No. 18 at 1]; (First Mot. for Prelim. Inj. at 1–2). Munt also asserts that "DOC officials refused to turn over the evidence, threatened to destroy it, refused to preserve it and claim to have destroyed it." (Munt Aff. in Supp. of Second TRO at 1); *see also* (First Mot. for Prelim. Inj. at 3). Furthermore, because he was sent to segregation, Munt states that all his legal papers were seized. *See* (Munt Aff. in Supp. of Second TRO at 1); *see also* (First Mot. for Prelim. Inj. at 1).

Defendants assert that the documents in question relate to a letter sent by Munt to a female correctional officer suggesting that Munt has an inappropriate fixation with the officer, and it was this behavior that led to his segregation assignment and not in retaliation for Munt's filing of his various lawsuits, as he suggests.[6] *See* (Mem. of Law Opposing Pl.'s Second & Third Mots. for

---

[6]    Defendants did not file a specific memorandum in opposition to Munt's Second Motion for TRO. That said, because Munt's Second Motion for TRO was clearly denominated as such and because Munt's additional motions for injunctive relief filed soon thereafter appear to address some of the same factual allegations, the Court treats Defendant's failure to file a specific response in opposition to Munt's Second Motion for TRO as strategic. That is, Defendants appear to have chosen to address the issues raised in the Second Motion for TRO in response to Munt's Motion to Stay—which reiterated a request for return of documents related to his November 3, 2017,

Prelim. Injunctive Relief, "Mem. in Opp'n to Mot. to Stay") [Doc. No. 45 at 2–3]; (Mem. of Law Opposing Pl.'s Second Mot. for Prelim. Injunctive Relief "Mem. in Opp'n to First Mot. for Prelim. Inj.") [Doc. No. 50 at 2–3]; *see also* (Aff. of Susan Norton, "Norton Aff.") [Doc. No. 51 ¶ 3]; (Ex. 2, Attached to Norton Aff.) [Doc. No. 51-1 at 3] (incident report); (Ex. 4 at 8, Attached to Norton Aff.) (response from Warden Eddie Miles ("Warden Miles") to Munt regarding the confiscation of the affidavit); (Ex. 4 at 12, Attached to Norton Aff.) (response from Warden Miles to Munt regarding Munt's "19 page letter to a staff [member] was inappropriate" because it was "speaking of a relationship").[7] To that extent, Defendants argue that "Plaintiff's discipline while at MCF-STW for sending this letter to a DOC staff member is not at issue in this lawsuit." (Mem. in Opp'n to Mot. to Stay at 3). Furthermore, Defendants assert that even if Munt's complained-of conduct was related to his Complaint, he is not entitled to injective relief under the *Dataphase* factors, largely because Munt has failed to demonstrate likelihood of success on his denial-of-access claims. *See* (Mem. in Opp'n to First Mot. for Prelim. Inj. at 7–9).

In his Reply, Munt's reiterates many of the same points he has made in his various other filings with the Court. For example: Defendants are responsible for taking all of his "most important legal materials"; Defendants have "completely strip[ped] [him] of [his] access to the courts"; "[e]ven when no discipline is imposed these papers are not returned and are destroyed, often before inmates are even given a chance to exhaust administrative remedies"; and Defendants prevented Munt "from filing the full suit." *See* (Reply to Defs.' 5/7/2018 Mem., "Reply to Opp'n to First Mot. for Prelim. Inj.") [Doc. No. 46 at 1–3, 6]. Yet, in the same Reply, Munt states the

---

discipline—and Munt's First Motion for Preliminary Injunction which also requests the return of the same documents. *See* (Mot. to Stay at 3); (First Mot. for Prelim. Inj.).

[7]    When referencing the exhibits attached to the Norton Affidavit, CM/ECF pagination is used.

issues related to his time in segregation will be before this District "in a habeas petition as soon as it is exhausted in the state courts." (*Id.* at 4). Munt, however, does not appear to assert arguments related to whether he has demonstrated that an injunction should issue under the *Dataphase* factors. In fact, the only statement related to this issue is Munt's assertion that "[s]hould the court buy Defendants['] argument, it also gives fuel to the full suit's challenge to the *Dataphase* factors constitutionality along with other impediments created by the courts to excuse failure to do their duty to uphold the Constitution." (*Id.* at 5–6).

This Court provided Munt until July 1, 2018, in which to respond to Defendants regarding their opposition to his First Motion for Injunctive Relief. *See* (Text Only Order Dated May 18, 2018) [Doc. No. 49]. Notwithstanding this deadline, Munt mailed a reply on June 11, 2018, which was received by the Court on June 14, 2018. The arguments presented in reply are mirrored in other submissions. For example, the undersigned and "Judge Nelson are . . . not allowed to serve on this case"; the Defendants continue to deprive him of his legal research; the printing limits and lack of law library access prevented from preparing his reply there; and the *Dataphase* factors weigh in favor of granting his First Motion for Preliminary Injunction. *See generally* (Reply to Defs.' 5/30/2018 Resp. & Aff., "Reply to First Motion for Prelim. Inj.") [Doc. No. 55]. In his Reply, however, Munt asks for an evidentiary hearing because he asserts it would demonstrate that he "raised multiple meritorious challenges to the 11/3/2017 discipline." (*Id.* at 2).

## 2.    Motion to Dismiss

Defendants challenge Munt's Complaint under a variety of theories: (1) Munt's claims for monetary damages against Defendants in their official capacities are barred under the Eleventh Amendment; (2) Munt has failed to state that Defendants violated his constitutional rights; (3) Munt does not plead sufficient facts to demonstrate personal involvement by Defendants; (4)

Munt's claims for relief are inappropriate because it would impermissibly inject the Court into the administration of the prison facility; and (5) Munt failed to plead that punitive damages are warranted in this instance. *See* (Mem. in Supp. of Mot. to Dismiss) [Doc. No. 23 at 3–11]. Specifically, as it relates to Munt's failure to state a constitutional violation, Defendants argue that Munt's claims against Defendants are not plausible. *See* (*id.* at 6–7). As it relates to personal involvement, Defendants argue that Munt failed to allege "specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." (*Id.* at 8) (internal quotation marks omitted) (alteration in original). Furthermore, Defendants assert that Munt's Complaint "is so deficient or defective that the court" should dismiss this action with prejudice. *See* (*id.* at 11).

In response, Munt asserts that: (1) "[t]he 11th Amendment does not bar individual capacity damages"; (2) he has pleaded a constitutional violation because "the lack of ability to make reasonable payments when need[ed] for copying/printing/postage/legal materials impedes access to the courts"; (3) Munt has pleaded personal involvement because "Defendant Roy is responsible for the policies that underly [sic] the violations. Defendant Warner has authority over Discipline and Property and his willful inaction caused harm . . . . Defendant Coward's actions with the [MCF-STW] Law Library are his involvement."; (4) with respect to a request for an injunction, "[o]nce a constitutional violation is shown, courts have considerable powers to grant relief"; (5) punitive damages are warranted because Munt's Complaint demonstrates "callouse [sic] indifference to [his] constitutional rights"; and (6) dismissal with prejudice is not justified because the failings that Defendants identify are curable by amendment and Munt is only required to "make

general allegations. Specific facts and evidence are only needed at trial and summary judgment." ("Mem. in Opp'n to Motion to Dismiss") [Doc. No. 34 at 5–15].

### 3.      Motion to Strike

Munt "asks the Court strike Defendants' 'Memorandum of Law Opposing Plaintiff's Motion for Preliminary Injunctive Relief'" (Mot. to Strike at 1). Munt believes that the Court should strike this submission because he "has not filed a Motion for Preliminary Relief," but a "Temporary Restraining Order (TRO) Motion." Munt cautions that should the Court convert the motion, he "will object to any such recharacterization" because Munt believes "that such a conversion violates the equitable rules covering recharacterization." *See* (*id.* at 2).

Defendants did not respond to Munt's Motion to Strike.

### 4.      Motion to Stay

Munt moves for a stay on two grounds: (1) the case should be stayed pending resolution of Munt's Motion to Recuse because if the undersigned and Judge Nelson do not recuse, Munt states he will appeal that determination to the Eighth Circuit and "the case will need to be stayed anyway"; and (2) in similar fashion, if Munt's First Motion for TRO is not granted, Munt will appeal that determination to the Eighth Circuit and "the case will need to be stayed anyway." *See* (Mot. to Stay at 1–2); *see also* (Second Aff. in Supp. of Pl.'s First Mot. for TRO & Request for Court Action, "Second Munt Aff.") [Doc. No. 39]. Also, as discussed above in connection with Munt's Second Motion for TRO and First Motion for Preliminary Injunction, Munt requested the return of certain documents in his Motion to Stay. *See* (Mot. to Stay at 3).

Defendants do not specifically address the propriety of Munt's request for a stay, but argue generally, that his request "should not be considered and should be denied" because Munt's "filings do not appear to be proper motions, contain untimely arguments related to fully briefed

motions, and introduce new arguments related to [Munt's] state court case" not properly before the Court. *See generally* (Mem. in Opp'n to Mot. to Stay).

## III.    DISCUSSION

As discussed in more detail below, the Court is confronted with related and arguably overlapping dispositive motions. Ultimately, these dispositive motions turn largely on the threshold question of whether Munt asserts facially plausible claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (stating claims that lack facial plausibility do not demonstrate that a pleader is entitled to relief); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (stating "[t]here is substantial overlap between [factors governing motions to stay] and the factors governing preliminary injunctions"); *S.J.W. ex rel. Wilson v. Lee's Summit R–7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (stating likelihood of success on the merits is the most important of the factors when considering injunctive relief). That is, whether Munt pleaded facially plausible claims directly implicates his ability to maintain this action, demonstrate likelihood of success on the merits for his motions seeking various forms of injunctive relief, and his ability to demonstrate the propriety of a stay of this lawsuit. *Cf. Nken*, 556 U.S. 418. In other words, claims that are not facially plausible are not likely to succeed on the merits and would not justify injunctive relief or a stay. Determining whether Munt alleged facially plausible claims is best done in the context of Defendants' Motion to Dismiss. To that end, the Court addresses the motions in this order: (1) Defendants' Motion to Dismiss; (2) Munt's Motion to Strike; (3) Munt's Motions for Injunctive Relief; and (4) Munt's Motion to Stay.

### A.    Motion to Dismiss

#### 1.    Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has

> facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). That is, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks and citations omitted) (second alteration in original).

### 2.    Analysis

Munt's Complaint is deficient in two ways, each of which independently provides a basis for granting Defendants' Motion to Dismiss. First, Munt failed to plead sufficient facts suggesting that Defendants are responsible for the conduct alleged. Second, even if Munt's Complaint could be construed to plead sufficient personal involvement by the Defendants, he failed to plead sufficient facts generally to state a claim for relief. The Court addresses each in turn.

### a.    Failure to Plead Sufficient Personal Involvement

"It is well settled . . . that 'respondeat superior is inapplicable to claims under 42 U.S.C. § 1983.'" *Iheme v. Hennepin County Sheriff Dep't*, No. 12-cv-2269 (DWF/JJK), 2012 WL 8023743, at *3 (D. Minn. Nov. 6, 2012) (Keyes, Mag. J.) (quoting *Bell v. Kansas City Police Dep't*, 635 F.3d 346, 347 (8th Cir. 2011)), *adopted by* 2013 WL 1881606 (May 6, 2013) (Frank, J.). "In order to state an actionable § 1983 claim . . . , the complainant must describe a set of facts showing what the named defendant itself actually did (or failed to do) . . ." *Id.*

The entire universe of facts in Munt's Complaint regarding the named Defendants are: (1) Roy "is the ultimate person responsible for the policies that underly [sic] the Constitutional violations in question" and because he "has the authority and duty to see that any Court Orders are complied with"; (2) Warner's "authority includes Discipline and Property" and that Warner's

"willful inaction has knowingly caused harm to this suit . . . and impeded other court actions"; and (3) Coward "is responsible for the [MCF-Stillwater] Law Library and his willful actions and inaction has knowingly impeded this suit, caused other pleadings to be untimely, inadequate or indefinitely delayed." (Compl. at 7–8). These are conclusory allegations that contain insufficient factual enhancement to demonstrate what the Defendants did (or did not do) that allegedly violated Munt's constitutional rights. *Cf. Iqbal*, 556 U.S. at 678. For example, Munt asserts that Defendants' willful actions and inactions delayed his court cases. Munt's Complaint is completely silent regarding the specific actions or inactions for which Munt alleges Defendants are responsible. *See generally* (Compl.). Likewise, Munt has not stated how these actions or inactions specifically affected those cases. Munt's failure to plead sufficient personal involvement is a sufficient basis to grant Defendants' Motion to Dismiss. *See Iheme*, 2012 WL 8023743, at *3. That said, Munt's failure to sufficiently plead personal involvement evidences more fundamental pleading failures throughout his Complaint that prevent him from stating a claim for which relief can be granted.

### b. Failure to State a Claim for Relief

As an initial matter, the Court notes that it addresses Munt's activity in both this and other litigations in this District when demonstrating a lack of facial plausibility regarding Munt's allegations in the instant case. These litigations—and the documents related thereto that this Court references—are all matters of public record, and therefore the Court need not convert Defendants' Motion to Dismiss into one for summary judgment by considering these documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (stating "public records . . . include[e] judicial records and [related] documents"); *see also Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th

Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").

*Lewis* forecloses many of Munt's allegations. Specifically, *Lewis* stated there is no per se "right to a law library or legal assistance." 518 U.S. at 350. To that end, Munt cannot "establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. Said differently, the Constitution "does not guarantee inmates the wherewithal to transform themselves into litigating engines." *Id.* at 355. Therefore, Munt must assert facially plausible claims that a "legal claim had been frustrated or was being impeded." *Id.* at 353. When viewing Munt's allegations in his Complaint, his bald assertions do not contain sufficient factual enhancement to demonstrate facially plausible denial-of-access claims. The Court addresses Munt's specific allegations related to: (1) the copying, printing, and postage policies; (2) adequacy of legal resources; and (3) property policy below.

### i.    Copying, Printing, and Postage

Munt alleges that for him to properly serve the thirty-one defendants that he contemplates suing, it would cost at least $1,450 dollars in DOC copying fees to properly serve them. *See* (Compl. at 9–10). This statement, without more, is not plausible on its face. Critically, the Court does not understand why Munt would be required to make thirty-one copies of a filed complaint. Under 28 U.S.C. § 1915—the statute that controls service of documents IFP litigants file—it is the Court, and not Munt, that "shall issue and serve all process." *See* 28 U.S.C. § 1915(d). That is, once Munt files **one** copy of his operative pleading and completes the necessary service of process forms for the named Defendants, it is the Court's responsibility to ensure Defendants are properly served, including sending the operative pleading. *See* (Order Dated Jan. 9, 2018, "IFP Order") [Doc. No. 10 at 1–2] (granting Munt's IFP status and ordering service on Defendants). That is

exactly what happened in the instant case. The Clerk's Office sent the necessary forms to Munt, which he received and completed. *See* (Letter Dated Jan. 10, 2018) [Doc. No. 11]; *see also* (Summons in a Civil Action) [Doc. No. 16]. In response to receiving the service forms, the Clerk's Office sent each named Defendant the: "Order Granting IFP, Complaint, two Waiver of Services (AO 399), and one Prepaid Envelope." *See* (Notice of Lawsuit and Request for Waiver of Service) [Doc. No. 15] (docket text). As far as this Court is aware, Munt was not responsible for costs associated with serving the Defendants—including costs associated with sending three copies of his Complaint. Munt is no stranger to this approach; prior to filing this lawsuit, Munt filed two other § 1983 lawsuits in this District of which this Court is aware. *See Munt v. Minn. Dep't of Corrs.*, No. 16-cv-1206 (SRN/SER) (D. Minn.); *Munt v. Larson*, No. 15-cv-582 (SRN/SER) (D. Minn.). Each case followed the same procedural progression: Munt filed his Complaint; was granted IFP status; submitted service of process forms; and the Clerk's Office served the named defendants in those lawsuits, including sending copies of the respective pleading. At no point was Munt required to conduct himself as he alleges in the current Complaint.

Further related to Munt's arguments directed to his ability to serve thirty-one defendants, Munt asserts that the limitation of printing fifty pages per week with "no exceptions" prevents him from filing his "full" lawsuit. *See* (Compl. at 3–4, 10). Munt's activity in this case (and in this District more generally) undermines any facial plausibility to this allegation as well. In the instant case, Munt filed a handwritten Complaint, Motions for Injunctive Relief, and a Motion to Recuse, among others. By last count, Munt filed twenty-one different documents with the court. And yet, Munt has carried out the bulk of representing his interests in this case by handwritten submissions and none of those submissions have implicated printing limitations.

Munt seems to be implying that these handwritten submissions are somehow impeding his access to the Courts. But he has not alleged any facts that would support this position, and even if he had, such a position is not supported by the law. *See, e.g.*, *Lewis*, 518 U.S. at 351 (stating a prisoner need only have "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" (internal quotation marks omitted)); *Jones v. James*, 38 F.3d 943, 945 (8th Cir. 1994) ("In the absence of a systemic denial, a successful denial-of-access claim requires a showing of prejudice."). That is, on the basis of Munt's allegations, prejudice is not facially plausible solely on a distinction between handwritten and typed submissions because—regardless of the nature of the submission—Munt is provided a reasonably adequate opportunity to assert his constitutional violations and the Court is required to construe these allegations liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (stating pro se filings—including handwritten submissions—must be construed liberally). In a slightly different context, Judge Nelson concluded that Munt's failed attempts at obtaining relief did not necessarily warrant appointment of counsel and instead "may simply mean that Munt has presented losing arguments—arguments that would have fared no better if Munt had had the assistance of legal counsel." Order Dated Aug. 19, 2016, *Munt v. Larson*, No. 15-cv-582 (SRN/SER) [Doc. No. 127 at 24]. Similarly, in the instant case, any insinuation that Munt makes with respect to his handwritten submissions being the reason why he is prejudiced in asserting his constitutional violations is not facially plausible; the factual allegations that form the basis of the relief sought would be the same regardless of whether they are handwritten or typed, or otherwise drafted in a way that Munt finds more ideal.

Munt's allegations related to postage fare no better. Importantly, Munt does not assert that the postage policy prevented him from filing documents with the Court. In fact, Munt asserts the

opposite: "[i]f there is more postage than you have money [in your account, the mail **still goes out**." *See* (Compl. at 12) (emphasis added). That is, Munt states mail is delivered to the Court regardless of fund availability. Thus, it is not facially plausible that the postage policy acts as an impediment when accessing the Courts as Munt asserts. *Cf. Lewis*, 518 U.S. at 351. Even viewing these policies collectively, it is not plausible on its face that a combination of the copying, printing, and postage policies impeded Munt's "opportunit[ies] to present claimed violations of fundamental constitutional rights to the courts." *See id.* Again, Munt's filing activity in this case alone demonstrates the implausible nature of his allegations. *See* [Doc. Nos. 1, 2, 3, 4, 7, 8, 13, 17, 18, 32, 33, 34, 35, 38, 39, 41, 42, 46, 47, 48, 55]

### ii.    Legal Resources

Here too, Munt's allegations do not support a facially plausible denial-of-access claim. Munt continues to conflate "meaningful" with "unimpeded." *See* (Compl. at 3, 13) (stating "unimpeded access would permit 168 hours" per week of access to the law library). The Constitution does not require unimpeded access. It only requires that inmates have "meaningful access" to bring their claims. *See Lewis*, 518 U.S. at 351; *Jones*, 38 F.3d at 945. That is, theoretical allegations of inadequacy do not assert a cognizable denial-of-access claim, instead the

> inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis*, 518 U.S. at 351. There is no factual enhancement demonstrating the type of actual prejudice contemplated by *Lewis*. *Cf. Iqbal*, 556 U.S. at 678. At no point in this case—or any other case in this District—has Munt put forth any facts that would tend to demonstrate that his cases were

dismissed because the DOC policies prevented him from filing submissions with the Court or otherwise prevented him from advocating his position. And again, Munt's allegations that the Defendants prevented him from filing his "full" complaint are not facially plausible. Likewise, Munt's allegations of denial of access while a facility is under lockdown or while an inmate is in segregation are not cognizable under the law. *Cf. Lewis*, 518 U.S. at 389 (stating the physical exclusion of inmates from the law library for heightened security considerations would "clearly pass muster under *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)").

That said, Munt's allegation that he sometimes loses time to respond is facially plausible given his status as an inmate. But this allegation ultimately fails to state a denial-of-access claim for which relief can be granted under the law. In other words, while Munt's allegations of lost time in which to prepare documents may plausibly occur on the basis of his status as an inmate, these allegations do not plausibly demonstrate that he is prohibited from a reasonably adequate opportunity to seek redress from the courts. *Cf. Lewis*, 518 U.S. at 351 (stating access to legal resources "are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" (internal quotation marks omitted)).

Importantly, the Federal Rules of Civil Procedure contemplate that parties may move for extensions of time. *See* Fed. R. Civ. P. 6(b). Munt is aware that he may seek more time and the Court will consider these requests consistent with the Federal Rules of Civil Procedure. In fact, Munt has availed himself of Rule 6(b) multiple times. *See, e.g.*, *Munt v. Larson,* No. 15-cv-582 (SRN/SER) [Doc. Nos. 54, 152, 156] (Munt's motions for extensions of time). These extensions were granted—and further modified—on the basis of his status as an inmate. *See* Order Dated Jan. 13, 2017, *Munt v. Larson*, No. 15-cv-582 [Doc. No. 178] (granting Munt's requests for more time

to respond to defendants' dispositive motion); Order Dated Feb. 16, 2017, *id.*, [Doc. No. 180 at 2] (Nelson, J.) (sustaining Munt's objection to the amount of extension and providing additional time in which to file a response to the defendants' dispositive motion). Furthermore, the Court framed Munt's arguments in other cases as relating to extensions of time. In one particular example, this Court stated "Munt's lack of access to the law library is essentially a request for more time. If Munt believes that he is entitled to more time to file his submissions with the Court, he should move for an extension of time." *Munt v. Minn. Dep't of Corrs.*, No. 12-cv-1206 (SRN/SER), 2017 WL 1232410, at *3 (D. Minn. Jan. 27, 2017) (Rau, Mag. J.), *adopted as modified on other grounds* 2017 WL 1180452 (Mar. 29, 2017) (Nelson, J.). In a different context, Judge Nelson stated "[t]o the extent that Munt has been unable to comply with a deadline or an impending deadline, he is free to seek an extension of time, explaining his need for the extension, with specific facts." *Munt v. Larson*, No. 15-cv-582 (SRN/SER), 2016 WL 4435671, at *11 (D. Minn. Aug. 19, 2016).

Perhaps as important, the Court is aware of situations in which Munt requested an extension, but nevertheless filed documents related to the extension soon thereafter. *See* Request for Extension of Time, *Munt v. Larson*, No. 15-cv-582 (SRN/SER) [Doc. No. 54] (filed on May 22, 2015 asking until the end of June 2015 to file a reply with an original deadline of June 2, 2015); Pl.'s Reply to Defs.' Mem. in Opp'n to Pl.'s Second Mot. for Prelim. Relief, *id.* [Doc. No. 59] (reply received on June 1, 2015, or one day before the original deadline); *see also* Second Request for an Extension, *id.* [Doc. No. 156] (received on December 1, 2016, and requesting an extension until February 1, 2017, to file a response to defendants' dispositive motion); Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, *id.* [Doc. No. 159] (forty-one page typed response to defendants' dispositive motion received on December 2, 2016— the day after requesting the extension). With respect to these requests for extensions in *Munt v.*

*Larson*, No. 15-cv-582, the fact that the submissions that were the subject of the extensions were typed and not handwritten and the fact that Munt filed these submissions well before he stated was possible when moving for the extensions undermines Munt's claims that his lack of access to legal resources affords him meaningful access to the courts generally and prevents him from meeting deadlines more specifically.

In the instant case, there is also filing activity that undermines the facial plausibility of Munt's claims that he is prevented from timely responding. For example, in regards to Munt's First Motion for Preliminary Injunction, the Court allowed Munt until July 1, 2018, in which to file a reply to Defendants' memorandum in opposition. *See* (Text Only Order Dated May 18, 2018). Defendants filed their memorandum on May 30, 2018. *See* (Mem. in Opp'n to First Mot. for Prelim. Inj.). Munt mailed his seventeen-page reply on June 11, 2018, making it timely under the Local Rules, notwithstanding this Court's *sua sponte* extension. *See* (Envelope, Attached to Reply to First Motion for Prelim. Inj.) [Doc. No. 55-2]; LR 7.1(c)(3) (stating that a reply memorandum for a dispositive motion may be filed fourteen days after the filing of a response). Arguably, it is disingenuous for Munt to make blanket allegations that Defendants prevent him from timely responding to court deadlines given he timely filed submissions with the Court. *Cf.* (Reply to First Motion for Prelim. Inj.).

In other words, Munt's failure to meet deadlines in this District appears to be more a function of his lack of diligence and less related to his access (or lack thereof) to legal resources as alleged in this lawsuit. *See* R&R, *Munt v. Larson*, No. 15-cv-582 (SRN/SER) [Doc. No. 189 at 16] (Rau, Mag. J.) (concluding that Munt's filing of a motion to amend two months after the deadline could not be excused by his status as an inmate), *adopted by* Order Dated Aug. 25, 2017,

*id.* [Doc. No. 196] (Nelson, J.). Consequently, Munt's allegations that Defendants have denied him access to the Courts on this basis is not facially plausible.

### iii.  Property Policy

Munt next alleges that the enforcement of policies regarding the limitations placed on legal papers is a constitutional violation. Munt does not allege there is a complete prohibition from accessing the courts on this basis—and even if he had, his activity in this case would clearly demonstrate the opposite. *See* (Compl. at 15–16). As a result, Munt must demonstrate that the policy prejudices him. *See Jones*, 38 F.3d at 945 ("In the absence of a systemic denial, a successful denial-of-access claim requires a showing of prejudice."). To that end, Munt asserts that he "lost a considerable amount of legal papers—much of it irreplaceable—due to this limit." (Compl. at 15). Furthermore, Munt asserts the property policy "has resulted in the loss of almost all evidence needed to prove my case." Munt's pleadings in this regard provide insufficient factual enhancement to survive review under Rule 12(b)(6). *Cf. Iqbal*, 556 U.S. at 678. For example, Munt makes no mention of what was lost or why he cannot replace it, just that he has "evidence" that is "irreplaceable." *See* (Compl. at 15–16). These conclusory labels are insufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 575 (2007), and *Iqbal*, 556 U.S. at 678.

At bottom, the inferences that Munt requires this Court to make—that having access to more of his personal property would somehow change the outcome of his cases—cannot be supported by a careful analysis of his litigation history in this District. For example—in a slightly different context—Judge Nelson concluded that Munt's failed attempts at obtaining relief did not necessarily warrant appointment of counsel and instead "may simply mean that Munt has presented losing arguments—arguments that would have fared no better if Munt had had the assistance of legal counsel." Order Dated Aug. 19, 2016, *Munt v. Larson*, No. 15-cv-582 (SRN/SER) [Doc. No.

127 at 24]. Applying Judge Nelson's reasoning to the instant case, no amount of legal research or accurate case citations can change the fact that Munt is not required to effect service of his Complaint on thirty-one defendants, as he alleges in his Complaint. That is, Munt's allegations are facially implausible regardless of the legal research that Munt could assert in support. Because of this, Munt's alleged loss of legal materials on the basis of the property policy is not sufficiently prejudicial to support a facially plausible denial-of-access claim.

Ultimately, Munt has failed to plausibly plead any factual basis by which the Defendants' policies prevent him from accessing the Courts and Munt's prolific filing activity and prolix submissions in both this and other cases demonstrates the exact opposite: Munt has not been deprived of **any** access to the courts, let alone **meaningful** access. Munt's failure in this regard is sufficient to grant Defendants' Motion to Dismiss and the Court need not address Defendants' remaining arguments.

That said, this Court is somewhat troubled by Defendants' argument that Munt's request for injunctive relief in his Complaint must be dismissed "because he seeks court intervention with the administration of MCF-STW." (Mem. in Supp. of Mot. to Dismiss at 10). That is not the standard—otherwise all inmate § 1983 claims that request injunctions would be facially invalid. It is true that the Court must give deference to government officials in the administration of prisons. *See, e.g.*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987) (holding that "[w]e . . . reaffirm our refusal, even where claims are made under the First Amendment, to substitute our judgment on . . . difficult and sensitive matters of institutional administration." (internal quotation marks omitted)); *Block v. Rutherford*, 468 U.S. 576, 588 (1984) (stating that "we are unwilling to substitute our judgment on these difficult and sensitive matters of institutional administration and security for that of the persons who are actually charged with and trained in the running of such

27

facilities." (internal quotation marks and citation omitted)); *Hosna v. Groose*, 80 F.3d 298, 303 (8th Cir. 1996) (stating that "it is not the role of federal courts to micro-manage state prisons"). But this standard does not require that a court rubber-stamp an institution's conduct and federal courts retain the authority to enjoin conduct that infringes on the constitutional rights of inmates. *See, e.g.*, *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015) (enjoining certain prison policies because "it is hard to swallow the argument that denying petitioner a ½–inch beard actually furthers the Department's interest in rooting out contraband"); *Lewis*, 518 U.S. at 349 ("It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts . . . ."). Here, however, Munt's Complaint does not allege a facially plausible constitutional violation. That is, the reason why Munt's Complaint should be dismissed is because the constitutional violations are facially implausible, not because the remedy he seeks is an injunction to cure the alleged violations.

For the above reasons, the Court must recommend that Defendants' Motion to Dismiss be granted. The question then becomes whether Munt's Complaint should be dismissed with or without prejudice. *Cf.* (Mem. in Supp. of Mot. to Dismiss at 11) (seeking dismissal with prejudice). This Court concludes that dismissal with prejudice is not warranted. Importantly, the primary case on which Defendants rely is markedly different than the instant case. In *Richards v. Minnesota*, No. 13-cv-3029 (JRT/JSM), 2016 WL 7007487, at *4 (D. Minn. Nov. 29, 2016), the Honorable Chief Judge Tunheim dismissed the plaintiff's section 1983 claims with prejudice because of "the Eighth Circuit's repeated conclusion that the ADA and Rehabilitation Act are comprehensive remedial schemes, suggesting that Congress did not intend violations of the statutes to be cognizable under section 1983." Furthermore, from a procedural perspective, the *Richards* litigation had been pending for many years, the plaintiff had unsuccessfully attempted to amend

his operative pleading on at least two other occasions, and there was a summary judgment motion pending. *See* 2016 WL 7007487, at *6. None of these characteristics are present here. First, a § 1983 action is the appropriate mechanism for Munt to assert his denial-of-access claims. *Cf. Lewis*, 518 U.S. at 346. Additionally, this case is more nascent than the *Richards* case. It has been pending for less than a year. Unlike the plaintiff in *Richards*, Munt has not unsuccessfully attempted to cure deficiencies in his Complaint. And there is currently no summary judgment motion pending.

To the extent that Defendants are concerned with Munt bringing other denial-of-access claims that fail to state a claim for relief because they are facially implausible, the Court notes that the Prison Litigation Reform Act provides certain protections in that regard. *See* 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that . . . fails to state a claim upon which relief may be granted . . . ."). Consequently, Munt's Complaint should be dismissed without prejudice for failure to state a claim.

### B.    Motion to Strike

Under Rule 12 of the Federal Rules of Civil Procedure, "[t]he court may strike from **a pleading** an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Munt moves to strike Defendants' Memorandum in Opposition to First TRO. *See generally* (Mot. to Strike). But as courts in this District have noted,

> there is no such thing as a "motion to strike"—at least when the paper being targeted is a memorandum or affidavit submitted in connection with a motion . . . . No such motion is authorized by the Federal Rules of Civil Procedure, and no such motion is authorized by the local rules of this District. Civil Rule 12(f) comes closest, authorizing parties to move a court to strike certain material from a pleading. But neither a memorandum nor an affidavit is a "pleading." *See* Fed. R. Civ. P. 8.

*Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, No. 04-cv-3368 (PJS/JJG), 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006) (Schiltz, J.). "Accordingly, there is no authority [to] strike" Defendants' Memorandum in Opposition to First TRO and Munt's Motion to Strike should be denied. *See Acker v. Envtl. Res. Mgmt., Inc.*, 93 F. Supp. 3d 1060, 1066–67 (D. Minn. 2015) (Nelson, J.).

C.    **Motions for Injunctive Relief**

First, this Court concludes that Munt's request for an evidentiary hearing on the issue of whether he "raised multiple meritorious challenges to [his] 11/3/2017 discipline," should be denied. *Cf.* (Reply to First Motion for Prelim. Inj. at 2). Critically, evidentiary hearings are appropriate where evidence is considered when adjudicating a motion. *See Dean v. Minn. Dep't of Human Servs.*, No. 16-cv-478 (PJS/LIB), 2016 WL 6821127, at *6 (D. Minn. Oct. 26, 2016) (Brisbois, Mag. J.), *adopted by* 2016 WL 6821068 (Nov. 16, 2016) (Schiltz, J.). Thus, to the extent that Munt's request for an evidentiary hearing relates to his desire to present evidence in opposition to Defendants' Motion to Dismiss, an evidentiary hearing is not appropriate. In other words, Defendants bring a "facial challenge[] under Federal Rules of Civil Procedure . . . 12(b)(6)," and no evidence needs to be considered because the Court is required to "restrict[] itself to the face of the pleadings." *See id.*

To the extent that Munt's request for an evidentiary hearing is in the context of his Motions for Injunctive Relief, the outcome is the same. First, because the Court recommends dismissal of this case, if adopted, Munt's Motions for Injunctive Relief are moot. Furthermore, the Court notes that Munt has asserted a denial-of-access claim, and is not challenging his time in segregation. *See generally* (Compl.). Munt also appears to be arguing that he can demonstrate that he exhausted his administrative remedies regarding his November discipline. *See* (*id.* at 2). That is, whether his

30

discipline was proper or whether he exhausted his administrative remedies regarding the same is not an issue currently before the Court. Thus, any evidence presented on these issues would not address the merits of Munt's Complaint and would be inconsequential to an analysis of the *Dataphase* factors. For these reasons, no evidentiary hearing is warranted. *Cf. Dean*, 2016 WL 6821068, at *6.

Turning the Court's attention to the merits of Munt's Motions for Injunctive Relief, even if Munt's Complaint could survive Defendants' Motion to Dismiss, Munt's Motions for Injunctive Relief should be denied because the factors described in *Dataphase*—including likelihood of success on the merits—do not suggest that injunctive relief is warranted. *See Dataphase*, 640 F.2d at 113.

### 1.    Legal Standard

When considering whether a preliminary injunction should issue, a court must evaluate several factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Dataphase*, 640 F.2d at 113. "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *W. Pub. Co. v. Mead Data Cent.*, *Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). "The burden on the movant is a heavy one where, as here, granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a

31

trial on the merits." *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993) (alteration in original) (internal quotation marks omitted).

### 2.    Analysis

Because the "likelihood of success on the merits is [the] most significant [*Dataphase* factor]," the Court starts its analysis with this factor. *See Wilson*, 696 F.3d at 776; *see also Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir. 1994) ("When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest.") .

### a.    Probability of Success on the Merits

"[P]risoners have a constitutional right of meaningful access to the courts," but "prisoners do not have a right to any particular means of access." *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992) (citing *Bounds v. Smith*, 430 U.S. 817, 823, 832 (1977)); *see also Lewis*, 518 U.S. at 351 (stating that a prisoner must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim"). That is, "[i]n the absence of a systemic denial, a successful denial-of-access claim requires a showing of prejudice." *Jones*, 38 F.3d at 945. As described above in the context of Defendants' Motion to Dismiss, it is not facially plausible that Munt has been hindered in his efforts to pursue a legal claim generally or that he was somehow prejudiced specifically. The Court will not rehash the same reasoning here. Instead, the Court will emphasize that nothing in

Munt's Motions for Injunctive Relief—to the extent they are related to his Complaint[8]—suggest that Munt is likely to succeed on the merits of his denial-of-access claims.

If anything, the additional information that was submitted with Munt's motions—both in support and in opposition of these motions—further demonstrates that Munt is unlikely to succeed on the merits. For example, Munt alleges in his Complaint that he must choose between hygiene items and incurring costs related to accessing the courts. *See* (Compl. at 9). In the context of Munt's Complaint—as described above—these types of conclusory statements without additional factual enhancement are insufficient to meet his pleading burden. In the context of Munt's Motions for Injunctive Relief, however, Defendants squarely rebut this and other allegations with affidavits and applicable prison policies that undermine Munt's assertions. Furthermore, at no point does Munt provide evidence of his own in support or rebuttal. All that he asserts are conclusory or self-serving statements, which are insufficient to rebut Defendants' submissions. *See, e.g.*, (Munt Aff. in Supp. of Second Mot. for TRO); (Second Munt Aff.); (Third Aff. in Supp. of First TRO) [Doc. No. 41]; *see also Munt v. Larson*, No. 12-cv-1206 (SRN/SER), 2015 WL 5673108, at *12 (D. Minn. Sept. 23, 2015) (Nelson, J.) (stating "conclusory statements are not enough to state a claim, let alone show the likelihood of success on the merits necessary for issuing a preliminary injunction"); *cf. Wickner v. Larson*, No. 09–cv–940 (DWF/JJK), 2010 WL 98940, at *3 (D. Minn. Jan. 11, 2010) (Keyes, Mag. J., as adopted by Frank, J.) ("Although Plaintiff has made conclusory

---

[8]     Munt's First Motion for TRO tracks extensively with his Complaint; many statements in support of the First Motion for TRO use verbatim language as that found in his Complaint. *Compare* (First Mot. for TRO at 2–13), *with* (Compl. at 9–16). Arguably, other of Munt's Motions for Injunctive Relief raise issues not related to his Complaint. For example, his discipline related to espousing feelings for a female corrections officer—the DOC's confiscation of an affidavit directed thereto—are unrelated to his denial-of-access claims to the courts. That said, the Court need not decide this issue because regardless of whether there is a relationship between the injunctive relief sought by Munt and the allegations included in his Complaint, this Court concludes that none of those allegations are likely to succeed on the merits.

allegations in his affidavit supporting his motion . . . , he has provided no . . . evidence to support

any likelihood of success on any of his claims asserted . . . against Defendants.").

Specifically, as it relates to Munt's allegation that he must choose between hygiene

products or materials used to communicate with the Court, Defendants state:

> Indigent offenders also receive the following items free of charge: one pen as
> needed; 35 sheets of writing paper per week; one first class (maximum weight 13
> ounces) postage paid large (9.5" x 12.5") envelope per week; two first class
> (maximum weight 13 ounces) postage paid business size envelopes per week (up
> to 4" x 9.5"); a total of 35 sheets of legal and medical record photocopies per week;
> one over the counter (OTC) medication from canteen per week; laundry soap and
> personal care items including such examples as toothbrush, toothpaste, razor, comb,
> deodorant, soap, shampoo, dental floss loops, and (if wearing dentures) denture
> cleaner and medically-authorized adhesive as allowed on the MINNCOR restricted
> centralized canteen catalog.

(Mem. in Opp'n to First TRO at 8) (citing Wanchena Aff. ¶ 3). Defendants also submitted: (1) the

DOC's policy on indigent offenders; (2) a kite related to a request for a third property bin; (3) the

DOC's policy on offender monetary accounts, and (4) the DOC's segregation intake handbook as

Exhibits 1–4, respectively, attached to the Wanchena Affidavit. *See generally* (Exs. 1–4, Attached

to Wanchena Aff.). In fact, the above quote is taken verbatim from the policy on indigent offenders.

*Compare* (Mem. in Opp'n to First TRO at 8), *with* (Ex. 1 at 1, Attached to Wanchena Aff.).[9] Munt

even suggests that he that he is able to bring a habeas petition in this District "as soon as it is

exhausted in the state courts." *See* (Reply to Opp'n to First Mot. for Prelim. Inj. at 4). This is not

a statement that evidences a denial of access to the Courts. That is, even if Munt's conclusory

allegations could plausibly state a claim for relief, they would nevertheless not withstand scrutiny

under a merits-based analysis because the evidence before the Court suggests that Munt's

allegations are not factual and his conclusory self-serving statements cannot rebut Defendants

---

[9]    The exhibits are included in a single submission. Thus, when referencing each exhibit,
CM/ECF pagination is used.

submission in this regard. *See Munt*, 2015 WL 5673108, at *12; *cf. Wickner*, 2010 WL 98940, at *3.

Munt asserts this case is a pared-down version of the full case, but this statement is unpersuasive. As described above in the context of Defendants' Motion to Dismiss, Munt's allegations of being impeded are not facially plausible. If Munt had pursued his "full" case with the same vigor as he pursued his "pared down version"—with the filing of nearly two-dozen submissions with the Court—he could have filed a complaint that asserted the claims he had originally contemplated. Nothing with respect to the policies at issue have objectively altered the manner in which Munt could bring this lawsuit and any failure is largely based on Munt's subjective misunderstandings of what must be filed with the Court as an IFP applicant—misunderstandings that he should not have given his litigation history in this District.

Ultimately, as this Court has concluded in the context of Munt's other attempts at obtaining an injunction on the basis of similar denial-of-access claims, Munt cannot succeed on the merits here because "[n]o reasonable jury could find that Munt has been hindered in pursuing his legal claim." *See* R&R Dated June 5, 2017, *Munt v. Larson*, No. 15-cv-582 (SRN/SER) (D. Minn.) (Rau Mag., J.) [Doc. No. 189 at 41], *adopted by* Order Dated Aug. 25, 2017 (Nelson, J.) [Doc. No. 196]. As a result, this factor does not weigh in favor of granting Munt's Motions for Injunctive Relief.

### b.    Threat of Irreparable Harm

For similar reasons with respect to success on the merits, Munt's filing activity in this case undermines any assertions that there is a threat of irreparable harm. That is, Munt cannot demonstrate "irreparable harm nor prejudice from the [DOC's] polic[ies]" because Munt "use[s] the[se] existing methods for access to the courts." *Aswegan*, 981 F.2d at 314. Munt's failure demonstrating irreparable harm is ultimately fatal to his Motions for Injunctive Relief. *See id.*; *see*

*also Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987) (stating that "[a]fter determining that there was no irreparable harm . . . the district court was not required to go further"). In the interest of thoroughness, however, the Court will consider Munt's Motions for Injunctive Relief under the remaining *Dataphase* factors.

### c.    Balance of the Harms

Munt's injunctions would impact Defendants' ability to administer their facilities. *See, e.g.*, (Mem. in Supp. of Mot. to Dismiss at 9–10); (Mem. in Opp'n to First Mot. for TRO at 12–13). The Supreme Court has held that courts must not treat such impositions lightly. *See, e.g.*, *Sandin v. Connor*, 515 U.S. 472, 483 (1995) (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment. Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life" (citations omitted)); *O'Lone*, 482 U.S. at 349–50 (discussing Supreme Court cases that instruct the courts to weigh the intractable problems of prison administration when balancing the interests of inmates and the government). Consequently, the Court finds that this factor does not weigh in favor of granting Munt's Motions for Injunctive Relief.

### d.    The Public Interest

The fourth *Dataphase* factor is "the effect on the public interest." *Dataphase*, 640 F.2d at 112. In particular, "the determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the [constitutional] challenge because it is always in the public interest to protect constitutional rights." *Phelps–Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc). Because this Court has determined that Munt is unlikely to succeed on the merits, coupled with the other policy considerations discussed above with respect

to deferring to prison officials in matters of prison administration, this Court finds that the public interest would not be served by granting Munt's Motions for Injunctive Relief. This factor, therefore, also weighs in favor of Defendants.

For the above reasons, Munt's Motions for Injunctive Relief should be denied.

### D.    Motion to Stay

Courts should only issue stays "where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). Here, Munt moved the Court to stay the proceeding pending adjudication of his Motion to Recuse and his First Motion for TRO. *See generally* (Mot. to Stay). Judge Nelson recently addressed Munt's Motion to Recuse, finding that recusal was "inappropriate" and "arguably prohibited." (Order Dated May 3, 2018 at 3). Furthermore, Munt's concern that this case would be stayed pending appeal to the Eight Circuit on the issue of whether the judges assigned to this case should be recused is illusory. *Cf.* (Mot. to Stay at 1–2). As Judge Nelson recently noted, "[a] litigant may not seek immediate appeal of a decision not to recuse." *See* (Order Dated June 18, 2018) [Doc. No. 56 at 2]. Finally, this Court recommends that Munt's First Motion for TRO be denied under the factors articulated in *Dataphase*. Under the circumstances, a stay would arguably not be a proper exercise of discretion. Importantly, the Court should consider

> four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. There is substantial overlap between these and the factors governing preliminary injunctions.

*Nken*, 556 U.S. at 434 (2009) (internal quotation marks and citations omitted). For the reasons set forth above with respect to Munt's Motions for Injunctive Relief, these factors do not weigh in favor of granting his Motion to Stay. Specifically, Munt has not demonstrated that "he is likely to

succeed on the merits," that he "will be irreparably injured absent a stay," or that the public interest

justifies a stay. *Cf. id.* Thus, Munt's Motion to Stay should be denied.

## III.   RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.   Plaintiff Joel Marvin Munt's First Motion for Temporary Restrainting [sic] Order

Pursuant to Fed. R. Civ. P. 65(b) [Doc. No. 3], Emergency Request for Relief [Doc.

No. 17], Motion to Strike [Doc. No. 33], First Motion for Expedited Court Action

[Doc. No. 38], and Request for Return of Documents [Doc. No. 42] be **DENIED;**

2.   Defendants Tom Roy, Mike Warner, and David Coward's Motion to Dismiss [Doc.

No. 22] be **GRANTED**; and

3.   This case be **DISMISSED without prejudice**.


Dated: June 25, 2018

 s/Steven E. Rau
STEVEN E. RAU
United States Magistrate Judge



**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).