## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JOEL MARVIN MUNT,<br><br>Plaintiff,<br><br>v.<br><br>TOM ROY, Commissioner of Corrections;<br>MIKE WARNER; and DAVID COWARD,<br><br>Defendants. | Case No. 17-cv-5215 (SRN/SER)<br><br><br>**MEMORANDUM OPINION AND<br>ORDER** |

Joel Marvin Munt, OID # 236179, MCF-Oak Park Heights, 5329 Osgood Ave. N., Stillwater, MN 55082, Pro Se.

Lindsay LaVoie, Office of the Minnesota Attorney General, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

The above matter comes before the Court on a consolidated review of two Reports and Recommendations. The first Report and Recommendation ("the First R & R") of Magistrate Judge Steven E. Rau [Doc. No. 58] was filed on June 25, 2018, to which Plaintiff Joel Marvin Munt ("Munt") timely filed Objections [Doc. No. 61] ("First Objs."). Defendants Tom Roy, Mike Warner, and David Coward ("Defendants") filed a response to Munt's Objections, [Doc. No. 62] ("Defs.' Resp."), and Munt filed a reply to Defendants' response ("Munt Reply"). [Doc. No. 63].

The second Report and Recommendation ("the Second R & R") of Magistrate Judge Steven E. Rau [Doc. No. 69] was filed on October 15, 2018, to which Munt timely filed Objections ("Second Objs." [Doc. No. 71].)  Defendants have not filed a response to Munt's Objections to the Second R & R.

Based on all the files, records, and proceedings herein, the Court:  (1) adopts the June 25, 2018 First R & R, as modified; (2) adopts the October 15, 2018 Second R & R in its entirety; (3) grants Defendants' Motion to Dismiss [Doc. No. 22]; and (4) denies Munt's motions.[1]

## II.     BACKGROUND

A detailed recitation of the factual and procedural background of this case is found in the First R & R, which the Court incorporates herein by reference.  In brief, Munt brings this action alleging a violation of his constitutional rights under 42 U.S.C. § 1983. (Compl. at 3 [Doc. No. 1].) Munt alleges that Defendants have instituted policies and regulations which restrict his access to the courts.  (*Id.*)  Specifically, Munt takes issue with "(1) onerous copying, printing, and postage policies; (2) inadequate access to legal resources; and (3) overly restrictive policies regarding personal property that prevent inmates from properly

---

[1] The Court denies the following motions filed by Munt: First Motion for a Temporary Restraining Order ("TRO") Pursuant to Fed. R. Civ. P. 65(b) ("First Motion for a TRO") [Doc. No. 3]; Emergency Request for Relief ("Second Motion for a TRO") [Doc. No. 17]; Motion to Strike [Doc. No. 33]; First Motion for Expedited Court Action ("Motion to Stay") [Doc. No. 38]; Request for Return of Documents ("First Motion for Preliminary Injunction") [Doc. No. 42]; and Fourth Motion for a Temporary Restraining Order ("Fourth Motion for a TRO") [Doc. No. 65].

maintaining legal work." (May 3, 2018 Order at [Doc. No. 43]) (summarizing allegations in Complaint at 9–16.)[2]

## III.    DISCUSSION

The district court must undertake an independent, de novo review of those portions of an R & R to which objection is made and "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* D. Minn. LR 72.2(b)(3).

Munt objects to "pretty much the whole R & R." (First Objs. at 14.)  He argues that the magistrate judge erred in recommending dismissal of his Complaint, for the following reasons: (1) contrary to the magistrate judge's findings, the Complaint pleaded sufficient personal involvement of each named Defendant, (*id*. at 2–3); (2) the Complaint plausibly alleged claims regarding the copying, printing, postage, legal resources and property policies of the Minnesota Department of Corrections ("DOC"), (*id*. at 3–8); and (3) the magistrate judge applied the wrong standard of review in evaluating the Motion to Dismiss. (*Id*. at 2, 10, 12–13.)  Munt also argues that the magistrate judge erred in recommending a denial of Munt's Motion to Stay, because "Judge Nelson and Magistrate Judge Rau are legally unable to rule on matters in this case." (*Id*. at 12.)  Finally, Munt argues that because he was unaware of the controlling legal standard applicable to motions for injunctive relief, the magistrate judge erred in recommending the denial of his motions for such relief. (*Id*.

---

[2] When referencing the Complaint, CM/ECF pagination is used. This pagination is two pages higher than the original, handwritten pagination (e.g., the original, handwritten page 1 is CM/ECF page 3).

at 7.)[3]

**A.  Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Success need not be probable to survive a motion to dismiss, but there must be more than the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. However, "legal conclusions or 'formulaic recitation of the elements of a cause of action' . . . may properly be set aside." *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678).

When considering a 12(b)(6) motion, the district court accepts as true all factual allegations in the complaint and grants all reasonable inferences in favor of the nonmoving party. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).[4]

"[A] pro se complaint must be liberally construed, and 'pro se litigants are held to a

---

[3] Munt does not appear to specifically object to the magistrate judge's recommendation regarding his Motion to Strike.  (*See* First R & R at 15.) The Court therefore adopts the magistrate judge's recommendation and denies the Motion to Strike.

[4] In his Objections, Munt confuses the standard of review applicable on summary judgment with the standard of review applicable on a motion to dismiss.  (First Objs. at 1, 2, 4–9, 11, 13–14) (using the acronym "AFD" to identify "actual factual dispute[s] that [were] not for the magistrate [judge] to resolve.").   Again, on a motion to dismiss, the Court construes all of Plaintiff's factual allegations as true.

lesser pleading standard than other parties.'" *Gertsner v. Sebig, LLC*, 386 F. App'x 573, 575 (8th Cir. 2010) (quoting *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 922 n.1 (8th Cir. 2010)). "However, this standard does not excuse pro se complaints from 'alleg[ing] sufficient facts to support the claims advanced.'" *Id.* (quoting *Stone Cty.*, 602 F.3d at 922 n.1).

Generally, courts may not consider matters outside the pleadings on a 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d). However, courts may take judicial notice of matters in the public record. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (citing *Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999)). Here, the Court examines the allegations in the Complaint and takes note of Munt's litigation in this District, as his lawsuits are matters of public record, without the need to convert Defendants' motion into a motion for summary judgment.

### 1. Section 1983

Pursuant to 42 § 1983, an individual may bring a civil action against state actors to "vindicate rights conferred by the Constitution or laws of the United States." *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000). Here, although Munt fails to identify the particular constitutional amendments that Defendants allegedly violated, his access-to-courts claims appear to implicate the First, Fifth and Fourteenth Amendments.[5] *See Bounds v. Smith*, 430 U.S. 817, 821–22 (1977).

The Court agrees with the magistrate judge's determination that *Lewis v. Casey*

---

[5] In his Objections, Munt asserts for the first time that his Seventh Amendment right to a jury trial has been violated by the R & R. (First Objs. at 14.) This claim is not asserted in the Complaint; therefore the Court does not address it here.

forecloses many of Munt's claims for relief. (First R & R at 19) (citing *Lewis v. Casey*, 518

U.S. 343 (1996).)  As noted by Magistrate Judge Rau, *Lewis* stands for the proposition that

there is no per se "right to a law library or legal assistance." 518 U.S. at 350.  The Constitution

"does not guarantee inmates the wherewithal to transform themselves into litigating engines."

*Id*. at 355.  Nor can a prisoner "establish relevant actual injury simply by establishing that his

prison's law library or legal assistance program is subpar in some theoretical sense."  *Id*. at

351.  Rather, a prisoner must assert facially plausible allegations that a "nonfrivolous[6] legal

claim [was] frustrated or was being impeded" by the defendants.  *Id*. at 353.

### a.  Copying, Printing, and Postage

In his Complaint, Munt alleges generally that DOC policies regarding photocopies,

printing of documents, and mail have hindered his ability to file a larger lawsuit.  (Compl. at

9–12, 14.)  He contends that the price of copying is onerous considering the volume of

supporting materials that he seeks to file, (*id*. at 9–10), the weekly 50-page limit of printed

materials hinders his ability to serve process and produce evidence in a prospective trial, (*id*.

at 10–12), and that there are no reasonable repayment plans for postage expenses. (*Id*. at 12.)

The Court agrees with the magistrate judge that these allegations fail to state a claim

---

[6] As noted in *Lewis*,

> Depriving someone of an arguable (though not yet established) claim inflicts
> actual injury because it deprives him of something of value—arguable claims
> are settled, bought, and sold. Depriving someone of a frivolous claim, on the
> other hand, deprives him of nothing at all, except perhaps the punishment of
> Federal Rule of Civil Procedure 11 sanctions.

518 U.S. at 353 n.3.

that is plausible on its face. As noted in the First R & R, Munt's status as an *in forma pauperis* litigant[7] removes his burden of issuing and serving process, as this burden shifts to the Court. *See* 28 U.S.C. § 1915(d). Munt's allegations concerning the expense and burden of serving process are thus inapposite.

Munt also emphasizes that the printing and copying policies cause him significant delay in filing various documents with the Court. (First Objs. at 4.) However, as noted in the First R & R, the Federal Rules of Civil Procedure provide that parties may move for extensions of time. *See* Fed. R. Civ. P. 6(b). These extensions provide Munt with a reasonable mechanism to continue to timely file various documents in this suit and others. Indeed, the First R & R notes many instances in which Munt requested and was granted extensions. (First R & R at 23–25.) Munt's claims regarding printing and copying are not plausibly cognizable.

Munt's allegations regarding postage are also not cognizable, as he does not allege that the postage policy prevents him from filing documents with the Court. As noted in the First R & R, his Complaint alleges the opposite: "[i]f there is more postage than you have money [in your account, the mail] *still goes out*." (Compl. at 12) (emphasis added). Given that there is no allegation that postage policies are an impediment to Munt's access to the Courts, Munt's claim regarding postage is not plausibly cognizable.

The Court thus agrees with the First R & R, that even viewing these policies collectively, it is not plausible "that a combination of the copying, printing, and postage policies impeded Munt's 'opportunit[ies] to present claimed violations of fundamental

---

[7] (*See* [Doc. No. 2])

constitutional rights to the courts.'" (First R & R at 22, quoting *Lewis*, 518 U.S. at 351.) As Magistrate Judge Rau also observed, "Munt's filing activity in this case alone demonstrates the implausible nature of his allegations." (*Id.*) (citing Doc. Nos. 1, 2, 3, 4, 7, 8, 13, 17, 18, 32, 33, 34, 35, 38, 39, 41, 42, 46, 47, 48, 55).

### b. Legal Resources

Munt further alleges that the DOC policies regarding access to legal resources impede his access to the courts. (Compl. at 13–14) ("With the current 2.5 hours per week [restriction] and my backlog of pleadings, it will take me years before the materials for this case are ready to file, unless relief is granted."). Defendants note that Munt does not deny that he has access to a law library, computer, and legal materials. (Defs.' Resp. at 7.) Rather, they observe, he wants more time than is allowed under DOC policy, which cannot support a cognizable claim. (*Id.*)

The Court agrees with the magistrate judge that this allegation does not support a plausible denial-of-access claim. Rather, this claim reflects what the *Lewis* court envisioned when it stated that there is no per se "right to a law library or legal assistance." 518 U.S. at 350. Munt's request of 24/7 unfettered access to the law library is essentially a request "to transform [himself] into [a] litigating engine[]" which the Constitution neither protects nor guarantees. (*Id.* at 355.) Munt is only guaranteed "meaningful access" to the courts, not the 12 hours per day of law library access that he seeks. He cannot merely plead that his access to the law library is "subpar in some theoretical sense." (*Id.* at 351.) Instead, Munt

> must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for

failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

(*Id.*) Munt has not alleged facts in the Complaint that satisfy this required step. If anything, the frequency and numerosity of documents filed by Munt belie any claim of lack of access.

Munt also argues in his Objections that restrictions on his ability to conduct legal research have precluded him from knowing the applicable legal standard for injunctive relief, *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981), and as such, he was prejudiced when filing several TROs. (First Objs. at 7.) Munt raises this issue in his Objections, however, and not in the Complaint. Again, on a motion to dismiss, the Court examines the plausibility of the plaintiff's allegations in the complaint.

Moreover, this argument is factually inapposite. This Court has issued rulings on Munt's previous requests for injunctive relief in other cases, including a temporary restraining order. *See, e.g.*, *Munt v. Minn. Dep't of Corr.*, No. 16-CV-1206 (SRN/SER), 2017 WL 1232410, at *3 n.3 (D. Minn. Jan. 27, 2017), *report and recommendation adopted, as modified*, No. CV 16-1206 (SRN/SER), 2017 WL 1180452 (D. Minn. Mar. 29, 2017) (explaining that the *Dataphase* factors were applicable to a temporary restraining order); *see also Munt v. Larson*, No. 15-CV-0582 SRN/SER, 2015 WL 5673108, at *5–6 (D. Minn. Sept. 23, 2015) (applying the *Dataphase* factors to a preliminary injunction). Indeed, in previous litigation, this Court noted that Munt should be aware of the applicable legal standard for injunctive relief:

In the R&R portion of the Order & R&R, Magistrate Judge Rau first found that

> Munt failed to address the applicable standard for preliminary relief set forth in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981), despite the fact that two prior orders in this case addressed the *Dataphase* factors. (Id. at 11–12.) Instead, in the underlying motion here, Munt discussed the *Dataphase* factors for the first time in his reply memorandum.

*Munt v. Larson*, No. CV 15-582 (SRN/SER), 2016 WL 4435671, at \*7 (D. Minn. Aug. 19, 2016). It strains credulity to suggest that Munt was not aware of the applicable legal standard for a temporary restraining order in light of these facts. In sum, Munt has not stated a plausible claim for relief concerning his claim for access to legal resources.

Finally, as noted above, Munt has the ability to request extensions of time if he believes that his legal resources are inadequate to meet filing deadlines. Availability of these extensions precludes a finding of an "actual injury" in an access to legal resources case such as this. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) ("[A]lthough [the defendant] missed a court deadline, the court gave him an extension of time; therefore, he has not proven an 'actual injury' resulting from his purported denial of access to the legal computers.").

### c. Property Policy

Munt also alleges that DOC's "two-bin" policy impedes his access to the Courts because it limits his ability to retain the documents that he needs to pursue his legal actions. (Compl. at 15–16.) The Court agrees with the magistrate judge that this allegation does not support a plausible denial-of-access claim. As noted by Magistrate Judge Rau, the Complaint does not identify the documents allegedly taken from Munt, nor does it explain why those documents could not be replaced. (First R & R at 26, citing Compl. at 15–16.)

In his Objections, Munt argues that he has been prejudiced because the two-bin policy

has ensured that he is not able to refer to previously filed documents in this action. (First Objs. at 9.) While the Court appreciates these details in Munt's Objections, they are not present in the Complaint. And again, even if supporting facts were sufficiently pled, the Court notes that the ability to request time extensions precludes a cognizable claim.

### d. Legal Standard

Munt also argues that the magistrate judge applied the incorrect legal standard in evaluating the Motion to Dismiss, (s*ee, e.g., id.* at 2) (arguing that "[a] Complaint need only plead general factual allegations, specific facts and evidence are only required for summary judgment. Magistrate continues to use wrong standard for this stage of proceedings"), and that the magistrate judge improperly made credibility findings. (*Id.* at 14) (citing First R & R at 33).

A complaint must plead facts, whether general or specific, which "'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678). In evaluating Munt's Complaint, the magistrate judge correctly applied this standard and concluded that, given the insufficient allegations, no such reasonable inferences were possible for any of Munt's claims. Magistrate Judge Rau applied the proper legal standard and this ground of objection is therefore overruled.

Likewise, the Court finds that Magistrate Judge Rau made no improper credibility determinations in his analysis of Plaintiff's Motions for Injunctive Relief. Munt points to the portion of the First R & R in which the magistrate judge analyzed the likelihood of the success of Munt's claims on the merits. (First Objs. at 14) (citing First R & R at 33.) In doing so, the

magistrate judge noted that in the context of Munt's Motions for Injunctive Relief, Defendants successfully rebutted Munt's claims that he is required to choose between expending funds on hygiene items or incurring costs related to accessing the courts. (First R & R at 33.) The magistrate judge noted that Defendants presented affidavits and applicable prison policies that undermined Munt's conclusory, self-serving statements. (*Id.*) This does not constitute a credibility determination, let alone an improper one. This ground of objection is rejected.

### e. Underlying Cause of Action

Munt objects to the magistrate judge's finding that Munt has failed to sufficiently identify the underlying cause of action that Defendants have purportedly impeded. "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The underlying claim must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416. Further, "the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." *Id.*

Here, the Complaint contains no substantive information concerning the underlying cause of action. Munt refers repeatedly to a larger complaint that he plans to file, but gives no additional detail about the merits of that complaint or the claims that he plans to bring. (Compl. at 3–5, 9.) Instead, the Complaint states, "When brought, the actual Complaint will have far more Defendants, more and broader claims, more harm detailed, more relief

sought and will include considerable supporting materials." (*Id.* at 5.) This allegation is insufficient for the Court to apply the "nonfrivolous" test as required by *Lewis*. Nor is Munt's requested relief sufficiently clear for the Court to conclude that it could award a remedy if the impeded claim were successful.

Munt also alleges that he lacks access to legal resources and his own legal materials when the prison is under lockdown or when he is placed in segregation. (Compl. at 13–14.) The Complaint refers to a particular instance when Munt was placed in segregation and lacked access to his legal materials, paper, and envelopes, rendering him "unable to file an emergency action to protect my legal materials, unable to file an emergency update to another suit []or request emergency relief there." (*Id.* at 14.) Barring access to legal resources and facilities under these circumstances, however, is not a constitutional violation, as the magistrate judge observed. (First R & R at 23.) In *Lewis*, the Supreme Court noted that courts must "accord adequate deference to the judgment of [] prison officials," and found that restrictions such as barring "lockdown" inmates from a prison's law library pass constitutional muster, "even where they result in actual injury," as long as they "are the product of prison regulations reasonably related to legitimate penological interests." 518 U.S. at 361–62. Munt's allegation regarding a lack of access to legal resources while in segregation or lockdown fails to state a claim upon which relief can be granted.

In his Objections, Munt asserts that a petition for certiorari was untimely filed, a habeas petition was delayed, amendments in another case were delayed, and pleadings have been filed without "required documents." (First Objs. at 4, 5, 9.) Again, because the Court

analyzes the content of the allegations in the Complaint on a motion to dismiss, additional factual allegations in Munt's Objections are not properly before the Court. But even if these allegations were subject to the Court's analysis, they fail to identify the particular cases in question, nor do they indicate how Munt was prejudiced.

### f. Immunity and Personal Involvement

In the Complaint, Munt brings claims against Commissioner Roy in his official capacity and Defendants Warner and Coward in both their official and individual capacities. (Compl. at 7–8.) Magistrate Judge Rau found that Munt failed to sufficiently allege Defendants' personal involvement in the alleged constitutional violations, stating,

> "[t]he entire universe of facts in Munt's Complaint regarding the named Defendants are: (1) Roy 'is the ultimate person responsible for the policies that underly [sic] the Constitutional violations in question' and because he 'has the authority and duty to see that any Court Orders are complied with'; (2) Warner's 'authority includes Discipline and Property' and that Warner's 'willful inaction has knowingly caused harm to this suit . . . and impeded other court actions'; and (3) Coward 'is responsible for the [MCF-Stillwater] Law Library and his willful actions and inaction has knowingly impeded this suit, caused other pleadings to be untimely, inadequate or indefinitely delayed.'"

(First R & R at 17–18) (quoting Compl. at 7–8.) Finding these allegations conclusory and insufficient as a matter of law, the magistrate judge recommended that Munt's claims be dismissed on this basis. (*Id.* at 17–18.)

### (1) Eleventh Amendment Immunity & Qualified Immunity

As noted, Munt asserts claims against Roy, Warner, and Coward in their official capacities. (Compl. at 7–8.) Section 1983 does not abrogate a state's immunity from suit under the Eleventh Amendment. *Larson v. Kempker*, 414 F.3d 936, 939 n.3 (8th Cir. 2005). Such immunity extends to claims for money damages and other retrospective relief brought

against state officials because official-capacity suits are not suits against the official, but are instead suits against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, among the forms of relief requested, Plaintiff seeks $1,000,000 in compensatory damages, $10,000 in punitive damages, reimbursement for "all costs related to sending and [sic] property as well as for sending it back in," and reimbursement for "all property shipped out and all property tossed or otherwise lost due to the two-bin limit." (Compl. at 22–23.) Defendants have not consented to suit. Accordingly, the Eleventh Amendment bars these § 1983 claims for compensatory and punitive damages against Roy, Warner, and Coward in their official capacities and they are dismissed with prejudice for lack of subject matter jurisdiction.

Defendants also move to dismiss based on qualified immunity. A government official is entitled to qualified immunity for his/her conduct in performing discretionary functions unless the conduct violates clearly established statutory or constitutional rights known to a reasonable person at the time. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity "is an entitlement not to stand trial under certain circumstances. Such entitlement is an immunity from suit rather than a mere defense to liability. . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985). Here, the allegations in the Complaint fail to sufficiently link particular conduct with a particular Defendant, let alone explain how that conduct violated clearly established statutory or constitutional rights. Accordingly, Defendants are entitled to qualified immunity and the claims against them are dismissed with prejudice. *See Trendle v. Campbell*, 465 Fed. App'x 584 (8th Cir. 2012) (upon finding that defendants were entitled to qualified immunity, modifying judgment to reflect that dismissal was with

prejudice).

### (2) Personal Involvement

Defendants also move to dismiss the claims brought against Warner and Coward in their individual capacities for lack of personal involvement. The magistrate judge correctly observed that a § 1983 claimant must plead sufficient personal involvement of the named defendants in the alleged constitutional violations. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citing *Iqbal*, 556 U.S. at 676)).

The Court agrees with the magistrate judge that Munt fails to plead sufficient personal involvement in the alleged constitutional violations as to Warner and Coward.[8] In his Objections, Munt adds additional information, namely, that "Warner took personal actions impeding my court access (ex: depriving envelopes in SEG) and didn't remedy violations brought to his attention. Coward directly controlled Plaintiff's STW Law Library time, 50-page printing limit and resources provided in SEG. Two-Bin Limit enforcement by Property and legal resources in SEG also come under Warner's power." (Objs. at 2.) To the extent that some of this additional information references Munt's alleged lack of access to resources while in segregation, for the reasons discussed earlier, these assertions fail to state a constitutional violation. *See Lewis*, 518 U.S. at 361–62.

---

[8] The magistrate judge also found that the Complaint failed to allege sufficient personal involvement on Commissioner Roy's part. (First R & R at 17–18.) Defendants only raised the lack-of-personal-involvement argument regarding the claims brought against Warner and Coward in their individual capacities, (Defs.' Mem. Supp. Mot. to Dismiss at 8 [Doc. No. 23]), as Roy was sued in his official capacity. The Court therefore modifies the First R & R in this respect, limiting the finding of a lack of personal involvement to Warner and Coward.

If Warner and Coward were not otherwise entitled to qualified immunity, some of this information might get Munt closer to providing more cognizable allegations of Warner's and Coward's personal involvement. However, they are entitled to qualified immunity and Munt offers these details in his Objections, not the Complaint. Because the information is not present in the Complaint, the Court cannot consider it when determining whether the Complaint should be dismissed. *See* Fed. R. Civ. P. 12(d) (noting that courts may not consider matters outside the pleadings on a 12(b)(6) motion.). As such, the Court agrees with the magistrate judge that the Complaint contains only conclusory allegations and therefore fails to sufficiently allege the personal involvement of Warner and Coward. Therefore, on this additional basis, the claims against them in their individual capacities fail for lack of personal involvement.

## B. Motion to Stay

Munt has also filed a Motion to Stay, arguing that the action should be stayed pending adjudication of his First Motion for a TRO and his Motion to Recuse. (*See generally* First Mot. for Expedited Court Action [Doc. No. 38].) The magistrate judge recommended the denial of the Motion to Stay, finding that the Motion to Recuse had already been adjudicated, (*see* May 3, 2018 Order), and that the First Motion for a TRO should be denied because Munt did not satisfy the *Dataphase* factors necessary for injunctive relief. (First R & R at 37.)

While Munt sought a stay in light of the pending First Motion for a TRO, he does not appear to object to the First R & R's recommendation that a stay be denied on this basis. The Court agrees with the magistrate judge that Munt does not satisfy the *Dataphase* factors, discussed in more detail below, and a stay is not warranted.

As to the other basis for which Munt seeks a stay—recusal—he lodges a general objection, stating, "[a]gain, Judge Nelson and Magistrate Rau are legally unable to rule on matters in this case. A stay would have minimized wasted resources of both Court and parties on rulings that will just have to be redone." (First Objs. at 12.) This basis of objection fails. The Court agrees with Magistrate Judge Rau that the issue of recusal has been adjudicated. (*See* May 3, 2018 Order) (denying motion to recuse and stating that in this case "recusal is not just inappropriate, it is arguably prohibited.") Furthermore, the Court agrees with the magistrate judge that "Munt's concern that this case would be stayed pending appeal to the Eighth Circuit on the issue of whether the judges assigned to this case should be recused is illusory." (First R & R at 37.) As the Court has previously held, "[a] litigant may not seek immediate appeal of a decision not to recuse." (June 18, 2018 Order [Doc. No. 56 at 2].) For all of these reasons, the Court denies the Motion to Stay.

### C. Motions for Injunctive Relief

Finally, Munt has filed several motions seeking injunctive relief. (*See* First Mot. for a TRO; Second Mot. for a TRO; First Mot. for Prelim. Inj.; Fourth Mot. for a TRO.) These motions largely restate the allegations in the Complaint and seek temporary relief to remedy the alleged harms. Magistrate Judge Rau recommended the denial of these motions. (First R & R at 30–37; Second R & R at 2–3.) He conducted a thorough analysis of the *Dataphase* factors and found that no factor weighed in favor of granting injunctive relief. (First R & R at 32–37.) In the Second R & R, the magistrate judge noted that the Fourth Motion for a TRO had been filed after a court order required that "no additional motions be filed pending the resolution of the various motions already before the Court," and found, on the merits, that

Munt's motion was repetitive of his prior motions. (Second R & R at 2.)

While Munt does not present a substantive objection to the magistrate judge's analysis of the *Dataphase* factors in the First R & R, he argues that he was unaware that *Dataphase* applied equally to motions for preliminary injunctions and motions for temporary restraining orders. (First Objs. at 7.) However, as noted earlier, in previous litigation before this Court, Munt has been informed of, and has applied, the legal factors of which he claims to be unaware. The magistrate judge correctly applied the law. As such, Munt's Objections to the First R & R's recommendations concerning Munt's motions for injunctive relief are overruled.

In his Objections to the Second R & R, Munt reiterates previous arguments concerning the general authority of the Court and the denial of his motions for recusal. He also argues that his Fourth Motion for a Temporary Restraining Order is different from his earlier motion. (Second Objs. at 2.) There is little distinction between these motions, however, as the latest motion seeks to prevent the loss of legal materials and computer files and to obtain greater access to the law library. (*See* Fourth Mot. at 1–4.) As the magistrate judge noted, in his prior motions, Munt had similarly asked for increased access to legal resources, additional time in the law library, and further protection of computer files. (Second R & R at 2) (citing First Mot. for TRO at 9–13.) The primary difference that Munt identifies in his Objections is that his later motion "is based on an analysis of the *Dataphase* factors and *Turner* factors." (Second Objs. at 2.) Those factors were fully considered by this Court with respect to all of Munt's motions for injunctive relief. Moreover, Magistrate Judge Rau denied Munt's Fourth Motion for a Temporary Restraining Order without prejudice. The Court has examined

Munt's Fourth Motion for a Temporary Restraining Order and agrees with the magistrate judge's recommendation. Accordingly, Munt's Objections to the Second R & R are overruled.

## IV. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections to Magistrate Judge Rau's Report and Recommendation of June 25, 2018 [Doc. No. 61] are **OVERRULED**.

2. Magistrate Judge Rau's Report and Recommendation of June 25, 2018 [Doc. No. 58] is **ADOPTED, as modified**.

3. Plaintiff's Objections to Magistrate Judge Rau's Report and Recommendation of October 15, 2018 [Doc. No. 71] are **OVERRULED**.

4. Magistrate Judge Rau's Report and Recommendation of October 15, 2018 [Doc. No. 69] is **ADOPTED IN ITS ENTIRETY**.

5. Defendants' Motion to Dismiss [Doc. No. 22] is **GRANTED**.

6. Plaintiff's First Motion for TRO [Doc. No. 3] is **DENIED**.

7. Plaintiff's Emergency Request for Relief ("Second Motion for TRO") [Doc. No. 17] is **DENIED**.

8. Plaintiff's Motion to Strike [Doc. No. 33] is **DENIED**.

9. Plaintiff's First Motion for Expedited Court Action ("Motion to Stay") [Doc. No. 38] is **DENIED**.

10. Plaintiff's Request for Return of Documents ("First Motion for Preliminary Injunction") [Doc. No. 42] is **DENIED**.

11. Plaintiff's Fourth Motion for TRO [Doc. No. 65] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 10, 2019                      <u>s/Susan Richard Nelson</u>
                                                      SUSAN RICHARD NELSON
                                                      United States District Judge